So if everyone's ready, I will call our last case of the day, and that's Michael Kosterlitz v. S.V. Knotta KLU. And good morning. May it please the Court, I am Donald Schutz, Counsel for Appellant Michael Kosterlitz. I do not challenge the factual findings of the District Court. The standard of review on all issues is de novo. The District Court ruled on a breach of contract cause of action that was not pled or tried, and respectfully, the Court misapplied section 672.401 sub 2, Florida Statutes, by ruling the title passed on delivery, while the contract the Court found to be enforceable under the statute of frauds, the $155,000 oral contract referenced in an April 2016 email, came into existence after delivery. Appellee takes pains to link the enforceable written contract that was not formed until after delivery to pre-delivery discussions, but that's not what the Court found. At page 10 of the Court's ruling, the Court finds that, quote, the earlier oral agreement contained the following terms. One, the sale price of the KLU was $155,000, and in the very email the Court adopts, it states that this contract occurred after the boat had been delivered. Dr. Libby clearly testified that the $155,000 oral agreement occurred after delivery. So respectfully, the trial Court misapplied section 672.401. Section 672.401 sub 2, which the Court cites in the opinion, has two sub paragraphs, A and B. Both begin, quote, if the contract requires. That is consistent with 672.401 sub 1 that states, quote, title to goods cannot pass under a contract for sale prior to their identification to the contract. I cite authority that subsection 1 is the general rule, and subsections 2 and 3 are subject to that general rule of subsection 1. That is, subsection 2 discusses delivery after contract, and subsection 3 discusses delivery before contract. Both of those are subject to the general rule of subsection 1. So my position is, and what I would ask the Court to reverse on, is that the Court's findings that the $155,000 contract memorialized in the April 2016 email is the enforceable contract, and that renders title passage impossible because the Court did not find, and indeed could not find, that the $155,000 contract existed before delivery. So even if title passed, the judgment still must be reversed, because the Court found that Dr. Libby breached the contract awarding $4,000, even though $9,000 would have been owed under the Court's own analysis. The Court found that Dr. Libby admitted stopping payments in July of 2015, and Mr. Comp... This is Judge Watkins. I know you're on another point. Let me ask a follow-up question in just a moment. On page 10, and I want to have a clarification about the statute of frauds and the Court's ruling. On page 10, the Court ruled, this writing, he's talking about the email, satisfies the statute of frauds because it indicates that a contract was previously made between the parties and is signed by the party against whom enforcement of the contract is sought. Now, that tells me that the contract that issued preexisted the email. Are you saying the delivery of the boat, of the two boats, basically the exchange of boats, occurred before the prior contract was entered into, the one that the judge is referring back to in this sentence? Yes, Your Honor. What the judge says on page 10 is, quote, the email states that the earlier oral agreement contained the following term, 1. The sale price of the clue was $155,000. So if Your Honor goes to the opinion at page, I believe it was 3, that's where the judge restates this contract and this email. And what it starts out as, it says, we first agree on $175,000. And the judge never found that the $175,000 agreement was an agreement that survived the statute of frauds. That was oral discussions that Mr. Kostelich did testify to. But then the court says that the agreement that survives the statute of frauds follows. And he says, after the boat was down your way and you started to work on it, what we came up with was $155,000. So if we go back to page 10. And he says that we agreed. The quote that you're looking at on page 3 says we reappraised the situation. And so we agreed to a difference based on all those calculations. So it appears that the agreement ultimately was $155,000. And that's what the judge has held. Are you disputing that? No, Your Honor. If we go back to page 10 and see the court's ruling, the court ruled that the only agreement that survives the statute of frauds is the earlier oral agreement that contained the following terms, $155,000. Now, both parties testified that that $155,000 discussion and agreement occurred before the email. That is, Dr. Libby testified that that occurred sometime in September of 2000. The earliest was September after delivery. And the latest was November after delivery. And as we see in Mr. Kostolich's email that the court cited, Mr. Kostolich says, after the boat was down your way. So the critical distinction I'm drawing is the court never said and never found, I find that there was a firm written agreement or a firm agreement that survives the statute of frauds for $175,000 that was entered before delivery. That finding is not what the court said. And I don't think that finding can be interpreted or implied in this finding because that's not what the court says on page 10. I get that, but irrespective of whether the court found it or not and irrespective of the statute of frauds, if there was an agreement at $177,000 and the boats were both delivered, then the agreement must have been modified by the agreement referenced in the statute of frauds. Would you agree with that? Because the parties have acted upon a prior agreement. They delivered the boats, and they're not cheap boats. No, Your Honor. The second boat to Mr. Kostolich was delivered after delivery of the Not a Clue. But to have title transfer by operation of law under 672.401, the contract has to be a contract that survives the statute of fraud. So an oral agreement that possibly is a valid oral agreement that does not comply with the statute of frauds is not a contract for purposes of transferring title under 672.401. 672.401 sub 2, A and B both say start with the sentence if the contract requires. And contract is a defined term, and that means the contract that survives the statute of fraud. Taking the court's, if we just go forward with that discussion, if a contract that does not survive the statute of frauds is in existence and delivery is done, that does not constitute a transfer of title under 672.401, which is what this court ruled. So even if there was a contract for $175,000, since that contract did not constitute a contract that the court ruled survived the statute of fraud, then title cannot transfer under- Two minutes, counsel. Two minutes. Thank you. Title cannot transfer under 672.401. Now, even if, as I say, Judge, the title transferred, the court misapplied 672.401 because my client would have still retained a secured interest. That's the way it works. It doesn't disappear. We just get converted from title holder to an unperfected lien holder. And as an unperfected lien holder, my client had the right under 672.609 to make a demand for assurances. And if that doesn't get met by the defendant, the buyer, then it repudiates the contract. That's 672.609. Upon repudiation, 679.609 lets us take possession of the vehicle or the vessel. So the only difference would have been that had we acted as an unperfected but secured lien creditor, my client would have had to go through the commercial disposition of the property under 679.610. But my client had an absolute right to seize the vessel, whether or not title passed, because the court ruled that Dr. Libby breached the contract. And by that breach, it gave my client the rights, if we're going to apply 672.401, to construct passage of title under these circumstances. It would have given my client the right both to repudiate the contract and to seize the vessel. So moving to – I'm sorry, I'm out of time. Thank you, Your Honor. Good morning. May it please the court. Alex Brockmeyer on behalf of the appellee, Dr. Robert Libby. We're requesting that this court affirm the final judgment in all respects because the district court properly held that under Florida law, my client owned and held title to the not a clue. And because of that, the remaining claims for conversion, civil theft, false arrest, and malicious prosecution failed. I want to start with the issue of ownership because that's where the court's questions were focused. And to Judge Watkins' question, on page 9 of the district court's order, the court says Libby claims the parties entered into an oral contract in the fall of 2015 for the sale and transfer of title to the clue, and the existence of that contract was clear. Kosterlitz testified at trial that the reason he delivered the clue to my client's Fort Myers Beach home was because the parties had an agreement in place. My opponent has just said he does not contest that finding. And both Kosterlitz and Dr. Libby testified they had an agreement for the sale of the not a clue that was in existence as of August 14, 2015. So whether it's under section 672-4012 or subsection 3, the result remains the same, which is my client owned and held title to the clue. Under subsection 2, my client owns and holds title to the clue because the clue was delivered to a specific location, my client's home, and because, as my opponent does not now contest, the contract was silent on how title was to pass, the act of delivery conveyed title as the district court correctly found. Under subsection 3, the contracts agreement, be it the oral agreement or the written agreement that was effectuated through that August 18, 2016 email referenced on page 10 of the district court's order, none of those agreements specify that Kosterlitz is to deliver documents of title to my client or are specifying how title is to be conveyed. That means we do not fall into subsection 3A of 672-401. This is just like the Palmier case where the court said, look, the agreement between the parties is silent about how title is to pass, and because in that case the good was not to be delivered by moving it, we fell within subsection 3, specifically in Palmier 3B, thus the court said title passed is on the date of contracting. So even accepting Kosterlitz's arguments is true that we had to wait for the written agreement to come into effect through this August 18, 2016 email, title still passes to my client under subsection 3B, just like in Palmier. So the district court did correctly find that my client owned and held title to the clue. Now, my opponent said that he held a security interest that was existed under subsection 1 of section 672.401. With due respect, that argument fails because subsection 1 only says that a party has a security interest in the good if the contract somehow conditions title upon payment of the good in full. That does not exist here. What I would submit to the court that we have through this April 18, 2016 email and the party's verbal agreement is a contract that does not require payment in full for title or ownership to pass. That, if the court wants to look at a comparable example, would place us within the in-rate Adrian Sons case cited by my opponent in his reply brief. There, remember, we had two contracts. One, which was an initial lease agreement that clearly said title was to pass. The second agreement, however, said no such thing. And the court said there that, look, if we're operating under the second agreement, then there was no security interest at all. And to take that one step further, even if Kosterlitz did have a security interest, he would still not be entitled to possess or own the clue or hold title to the clue unless or until he foreclosed on that lien. That's exactly what this court in U.S. v. Bailey said when it cited two Florida Supreme Court cases, both of which said that you do not have a right to own or possess a vessel or good or anything based on a lien. You have to foreclose on it. That never occurred here. And for those very reasons, Kosterlitz's claims for conversion and civil theft fail because my client, as the owner and title holder of the clue, did nothing to dispossess or steal the clue or its title from Kosterlitz. Likewise, my client's ownership and title holding status, as the district court found, correctly and properly defeats the false arrest and malicious prosecution claims because as the owner of this boat at the time this all occurred, my client had the good faith belief that he was in fact the owner based on the very documents that the district court found made him the owner and title holder and such that he could not have instigated the arrest of Kosterlitz. And more specifically to the act of malicious prosecution, on top of all the documentation that Sergeant Galloway had in front of him, it's important to note that he also did his own independent investigation. And that investigation led to the finding that the clue was hot-wired and that Kosterlitz had parked far away from my client's home. And that's important because as Sergeant Galloway testified to at trial, those are both acts inconsistent with someone who's entitled to use or otherwise own the vessel in this case. So there was probable cause for Kosterlitz to be arrested. And what's more, Kosterlitz failed to even prove the initial element of malicious prosecution, which was the initiation of a criminal proceeding. In the briefs we cite Orr and the Earp v. Carroll case, both Florida District Court of Appeal cases that say to establish or initiate a criminal proceeding in the state of Florida for this type of charge that Kosterlitz was charged with, you have to have an information filed. And that never occurred here. So the district court correctly ruled against Kosterlitz on the malicious prosecution claim. Which then really leaves us with what my opponent said was that the district court erred in stating that my client still owes $4,000 on this agreement. You know, with due respect to counsel, this was a case that he spent three days talking about payment to the district court, spent two days talking about payment with my client, Dr. Libby, and with Mr. Kosterlitz. It was an issue that he framed in his pre-trial brief under the possessory impeditory action. And so the district court did not err in addressing the remaining amounts owed on this contract. And we can further see that illustrated by Palmier. In Palmier, just like here, the buyer was found to have owed money under the purchase and sale agreement. And the district court said that in its opinion. But importantly, the district court, despite having said that the buyer still owed money under that purchase and sale agreement, also held that the buyer still was the owner and title holder to the vessel in that case. Reason being, just like here, the contract was silent and did not in any way, shape, or form state that payment in full of the purchase price had to be paid in order for title to pass. And so, for those reasons, we would request that this court affirm the final judgment in all respects. Thank you. Thank you. Court, again, Donald Shute on rebuttal. Section 679.609, a secured party's right to take possession after default, clearly gives us the right to take possession of the collateral after default. So, following that logic, what they're arguing is that Mr. Kostelov gave this boat to Mr. Libby with no payment. They have complete title with no payment other than a nominal down payment, and that Mr. Libby then left the transaction owning this boat free and clear with no competing obligation to pay the amounts due. That's not what the court ruled. The court did not find that Mr. Kostelov intended to give title without payment. So, the argument that 672.401... Mr. Shute, this is Judge Watkins. I want to get a factual matter correct here. When was the title to the trimaran conveyed to your client? June of 2016. So, your client had a trimaran paid for as payment. So, there was a substantial payment. A substantial payment had been made. You had titled his trimaran. Is that right? No, Your Honor. The August of 2015 is when the clue was taken down to Fort Myers. April of 2016 is the date of the email. And then a few months after April of 2016, Dr. Libby gives him the title to the trimaran in June of 2016. And what was the value of the trimaran agreed among the parties? I believe $30,000, Judge. So, that was a $30,000 payment on the not a clue to your client. Is that correct? After the April 2016 email, not before delivery of the clue. The only payment that Dr. Libby made before delivery was there was an August 14, 2015 $5,000 down payment. That was made in August of 2015. Then the not a clue went down sometime in August, around August 22 of 2015. Dr. Libby clearly testified in my brief, I went at length with him on the stand, that there was no agreement in place at least until September of 2015. And then somewhere between September 2015, November of 2015, they have the oral agreement for $155,000. That's then documented April of 2016. And after that, Mr. Libby gives him the title to the trimaran. So, I'm not contesting that the April 2016 $155,000 contract is binding as the court found. I'm contending that that clearly was entered after delivery, so title did not pass. And even if title passed, my client would still be a lien creditor under sub one because there was clearly a retention of title. He didn't deliver title. Right, but he delivered the boat, and your client repossessed the boat in 2017, at which time your client had possession of both the Nauticlu and the trimaran. Is that right? Am I right? Well, he had possession but not title. He never accepted the title to the trimaran. The title was signed and handed to him by Dr. Libby, but Mr. Kosterlitz has never accepted title, and indeed repudiated title, and that's in my civil theft demand file. We repudiate title to the trimaran. Who has the trimaran right now? We have the trimaran right now. We have never taken title to it. All right. Thank you. Very good, John. Thank you. Thank you. That concludes our arguments for the day, so we will be in recess.